Suzanne Iazzetta, Esq.
New Jersey Bar No. 034912005
**IAZZETTA LAW LLC**
**297 Orange Road, Suite 1**
**Montclair, NJ  07042**
Tel: 973-913-4693
Fax: 888-235-7762
E-mail: Suzanne@iazzettaLaw.com
*Counsel for Plaintiff Creditors Relief LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CREDITORS RELIEF LLC,** | CIVIL ACTION NO. 17-cv-7474 |
|     Plaintiff, | |
|     v. | |
| **UNITED DEBT SETTLEMENT, LLC d/b/a UNITED SETTLEMENT; EVERYTHING IS IN STOCK, LLC, d/b/a ELITE RESTAURANT EQUIPMENT, d/b/a KITCHEN EMPORIUM; MARCEL BLUVSTEIN, a/k/a MARCEL BLUSKIN; JOHN DOE ENTITIES 1-10; and JANE DOES 1-5,** | JURY TRIAL REQUESTED |
|     Defendants. | |

**<u>COMPLAINT</u>**

Plaintiff Creditors Relief LLC, for its Complaint against defendants United Debt Settlement, LLC; Everything is in Stock, LLC, d/b/a Elite Restaurant Equipment, d/b/a Kitchen Emporium; Marcel Bluvstein a/k/a Marcel Bluskin; John Doe Entities 1-5; and Jane Does 6-10; alleges as follows:

## NATURE OF CLAIMS

1.      This action arises under the Lanham Act (15 U.S.C. § 1051 *et seq.*), the Copyright Law of the United States (17 U.S.C. § 101 *et seq.*), the New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1 *et seq.*), unfair and deceptive acts and practices act, and common law.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is founded upon Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332(a)(1), 1338(a) and (b), and the supplemental jurisdiction of this Court under 28 U.S.C. § 1367.  The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

3.      Venue is proper within this Judicial District under 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

4.      Plaintiff Creditors Relief LLC ("**Creditors Relief**") is a limited liability company organized and existing under the laws of the State of New Jersey, having a principal place of business at 120 Sylvan Ave., Englewood Cliffs, New Jersey 07632.  Creditors Relief is a "person" as defined under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*  (the "**NJCFA**").

5.      Defendant United Debt Settlement, LLC, d/b/a United Settlement ("**United Settlement**") is a limited liability company organized and existing under the laws of the State of New York, and on information and belief has a registered agent at United States Corporation Agents, Inc., 7014 13th Avenue, Suite 202, Brooklyn, New York 11228 and a place of business at 137 Amherst Street, Brooklyn, New York 11235.  On information and belief, United Settlement regularly conducts business in the State of New Jersey. United Settlement is a "person" as defined

under the NJCFA.

6.      Defendant Everything is in Stock, LLC, d/b/a Elite Restaurant Equipment, d/b/a Kitchen Emporium ("**Elite Equipment**") is a limited liability company organized and existing under the laws of the State of New York, and on information and belief has a DOS Process address of 106 Central Park South, #8M, New York, NY 10019 and a place of business at 301 Mount Pleasant Ave., Newark, NJ 07104.  On information and belief, Elite Equipment regularly conducts business in the State of New Jersey.  Upon information and belief, Elite Equipment is an "alter ego" of United Settlement.  Elite Equipment is a "person" as defined under the NJCFA.

7.      On information and belief, defendant Marcel Bluvstein a/k/a Marcel Bluskin ("**Bluvstein**") is a natural person and is the principal of United Settlement, the principal of Elite, and a resident of the State of New York, with a residence at 300 East 90th Street, Apt PH9C/10D, New York, NY 10128.  Bluvstein is a "person" as defined under the NJCFA.

8.      Upon information and belief, defendants John Doe Entities 1-5 (the "**Doe Entity Defendants**") are entities which have participated in the acts set forth herein and/or which may be liable for the damages set forth herein, the names, principal places of business, and addresses of which are currently unknown.

9.      Upon information and belief, defendants Jane Does 6-10 (the "**Doe Individual Defendants**") are individuals who have participated in the acts set forth herein and/or who may be liable for the damages set forth herein, whose names and addresses of residences are currently unknown.

10.      On information and belief, Bluvstein was both a wrongful actor and the central figure and active force behind the other defendants' wrongful conduct, as set forth herein. Bluvstein actively, consciously, significantly, knowingly, and intentionally authorized, approved,

caused, induced, directed, decided, controlled, ratified and participated in the other defendants' wrongful actions described herein, and, is personally responsible and individually liable for such conduct.

11.     On information and belief, each of defendants and Bluvstein were, relative to the acts herein alleged, the agent of the other, and each was acting within the scope, purpose, and authority of that agency and with the knowledge, permission and consent of the other.

12.     On information and belief, Bluvstein has controlled the acts of the defendants as alleged herein.

13.     On information and belief, United Settlement, Elite Equipment, and the Doe Entity Defendants (collectively, the "**Entity Defendants**") have failed to maintain corporate formalities, and have blurred corporate identities

14.     On information and belief, there has existed such a unity of interest between and among the Entity Defendants and Bluvstein that any individuality and separateness of the Entity Defendants and Bluvstein has ceased, and that each is the agent and alter-ego of the other in the acts herein alleged.

15.     On information and belief, any and all acts hereinafter ascribed to the Entity Defendants or Bluvstein were done with the permission, consent, knowledge, and active inducement on the part of the other which together acted as co-conspirators and/or agents in the performance of the acts hereinafter more particularly described.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

16.     Creditors Relief is a debt settlement company and, and has been engaged in the business of helping its clients obtain debt relief.

17.     One of Creditors Relief's owners has used his years of experience offering debt

relief assistance to obtain millions of dollars of debt relief for his clients.

18.     Creditors Relief has been recognized for its professionalism and ability to obtain favorable debt relief settlements. Creditors Relief had been recognized with an A+ rating by the Better Business Bureau, and has received exposure on 1010 WINS, Bloomberg, CNBC, CNN, ESPN, FOX, MSNBC and WCBC NEWSRADIO 880.

19.     Creditors Relief maintains a website at www.creditorsrelief.com and www.creditorrelief.com ("**Creditors Relief Website**").  The Creditors Relief Website represents a wholly original work of authorship fixed in a tangible medium of expression and is copyrighted subject matter under the Copyright Law of the United States. U.S. Copyright Registration No. TX 8-345-483, duly issued for the Creditors Relief Website and is valid and subsisting. Creditors Relief is the owner of this U.S. Copyright Registration and has duly marked the Creditors Relief Website with a copyright notice.

20.     Creditors Relief uses a client agreement ("**Creditors Relief Agreement**"). The Creditors Relief Agreement represents a wholly original work of authorship fixed in a tangible medium of expression and is copyrighted subject matter under the Copyright Law of the United States. U.S. Copyright Registration No. TXu002044550 duly issued for the Creditors Relief Agreement and is valid and subsisting. Creditors Relief is the owner of this U.S. Copyright Registration.

**Defendants' Wrongful Acts**

21.     On or about September 23, 2016, Bluvstein contacted Creditors Relief, stating that he had a need for debt relief services.

22.     As a result of Bluvstein's contact, Creditors Relief provided Bluvstein with the Creditors Relief Agreement for Bluvstein's signature.

23.     On information and belief, Bluvstein did not actually require debt relief services, but rather contacted Creditors Relief solely to obtain information about how Creditors Relief's business operated and to obtain access to the Creditors Relief Agreement, for the purpose of setting up a competing debt relief services business.

24.     On information and belief, shortly after being provided with the Creditors Relief Agreement, Bluvstein incorporated and began operating his competing debt relief services business, United Settlement.

25.     The initial DOS filing date for United Settlement in New York was September 28, 2016, a few days after Bluvstein contacted Creditors Relief on September 23, 2016.

26.     United Settlement and Bluvstein also made slavish and/or substantially similar copies of the Creditors Relief Website. For example, below are comparative images taken from each of the parties' respective websites:

From CREDITORS RELIEF website (www.creditorsrelief.com)
(from registered and copyrighted work):



From United Settlement website (www.unitedsettlement.com - December 12, 2016 version):



27.     As shown above, the United Settlement website and the Creditors Relief Website have striking similarities. Not only did United Settlement present their alleged "recent results" in the same way, but United Settlement and Bluvstein used the exact same images of the Creditors Relief-arranged debt settlements, the exact same letters, and the exact same settlement numbers, upon which United Settlement and Bluvstein added individual creditor names that may or may not have been the actual creditor involved in those settlements.   Other than the creditor names, however, the debt settlement letters on the United Settlement website are exact duplicates of the debt settlement letters on the Creditors Relief Website.

28.     Moreover, United Settlement did not actually obtain any of the results depicted in the image set forth in paragraph 26 above, but falsely and misleadingly misappropriated the settlement results of Creditors Relief as their own.

29.     United Settlement and Bluvstein had ready access to the Creditors Relief Website in order to make the copies of the Creditors Relief work.

30.     Substantial and material portions of the United Settlement website were copied

directly from the Creditors Relief Website.

31.     Certain of United Settlement's website versions contained other false and/or misleading statements in connection with the offering for sale and sale of debt relief services, including, but not limited to:

- that, as discussed and shown above, United Settlement arranged specific debt settlements that were actually arranged by Creditors Relief, using doctored pictures of Creditors Relief-arranged debt settlement agreements;

- that, for one such Creditors Relief debt settlement misrepresented as arranged by United Settlement, the percentage of the total debt saved was 57% rather than 43%;

- that United Settlement has "SETTLED MILLIONS OF DOLLARS OF MERCHANT CASH ADVANCE LOANS" and/or "[w]ith over **$50 million dollars** saved our results are proven" (emphasis added);

- that United Settlement has "helped thousands of small business [sic] save 50% of the total balance"; and

- that "[o]n average our clients are saving 50 percent on their payments, increasing working capital and cash flow drastically."

32.     United Settlement's and Bluvstein's misrepresentations of the nature, characteristics, and/or qualities of their services in commercial advertising or promotion occurred in interstate commerce.

33.     United Settlement's and Bluvstein's false or misleading statements constitute unconscionable commercial practices, deceptions, fraud, false pretenses, false promises,

misrepresentations, and/or the knowing concealment, suppression, or omission of material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of services, and/or with the subsequent performance of United Settlement and Bluvstein as aforesaid.

34.     United    Settlement's    and    Bluvstein's    various    webpages    at www.unitedsettlement.com are substantially similar to the Creditors Relief Website, both currently and at various times since their publication.

35.     United Settlement and Bluvstein also made slavish copies of the Creditors Relief Agreement, which is copyrighted work, in which all or substantially all of the protectable expression was copied.

36.     United Settlement and Bluvstein used these copies of the copyrighted Creditors Relief Agreement as the client agreements for their competing debt relief services business.

37.     United Settlement and Bluvstein had ready access to the Creditors Relief Agreement pursuant to Bluvstein's fraudulent misrepresentations as set forth above.

38.     On information and belief, various versions of the United Settlement agreements were copied from the Creditors Relief Agreement.

39.     Creditors Relief, through one of its principals and through its attorneys, contacted United Settlement and Bluvstein regarding their copying and false advertising, including through a December 14, 2016 letter to Bluvstein from one of Creditors Relief's attorneys.

40.     In response, upon information and belief, United Settlement, Bluvstein, Elite Equipment, the Doe Entity Defendants and the Doe Individual Defendants (collectively, the "**Defendants**") made multiple false, misleading and defamatory postings about Creditors Relief on the Internet.

41.     On information and belief, these false, misleading and defamatory postings about Creditors Relief were made by the Defendants with malice, and in retaliation for Creditors Relief asserting its legitimate rights.

42.     The postings by the Defendants included the false and/or misleading statement, in a Google review posted on or about December 16, 2016, stating, "Beware of this company! I called them to get advice on my business debt, after speaking with my creditor I decided to deal with the matter myself.  After the company learned I settled my own debt they sent me a cease and desist and threatened to sue."

43.     This statement is false and misleading and harmful to Creditors Relief's business because, among other things, clients and/or potential clients will or will likely falsely believe that Creditors Relief threatens to sue simply because of one's choice not to do business with Creditors Relief.

44.     The postings by the Defendants also included the false and/or misleading statement, again in Google reviews, posted on or within a week before December 16, 2016, that "This company is a scam! Read the reviews on the CEO Michael Lupolover. Beware collects ridiculous fees and does NOT get the job done!"

45.     These postings in Google reviews are false and/or misleading and harmful to Creditors Relief because, among other things, clients and/or potential clients will or will likely falsely believe that Creditors relief "is a scam," "collects ridiculous fees," and "does NOT get the job done."

46.     The postings by Defendants also included the false and/or misleading statement and review, posted December 15, 2016 on the website of the Better Business Bureau ("**BBB**"):

> Beware of this company, they are un-American! I contacted Creditors Relief in search for help with my business cash advance

loan.  After getting the contract emailed to me . . . [I] did not sign the contract . . . . When Michael L[upolover, member of Creditors Relief] learned I opened my own company and settled my own debt he sent me cease and desist letter and is now threatening to sue.  This company is un-American and feels entitled. Just because I spoke to them they feel they own me and I have no rights, think again Michael L[upolover]!  This company is greedy and unfair . . . . Beware of this company!!

https://www.bbb.org/new-jersey/business-reviews/credit-and-debt-counseling/creditors-relief-in-englewd-clfs-nj-90104223/reviews-and-complaints?section=reviews &reviewtype=negative.

47.     This December 15, 2016 statement and review on the BBB website was initially posted under the name "Marcel B."   Upon information and belief, "Marcel B." is Defendant Marcel Bluvstein.

48.     Upon information and belief, the Defendants later changed the author of the December 15, 2016 statement and review on the BBB website from "Marcel B." to "Ruth A." to make it appear as if "Marcel B[luvstein]" did not make the statement, but "Ruth A." made the statement.

49.     Upon information and belief, "Ruth A." is one of the Doe Individual Defendants or a representative of one of the Doe Entity Defendants.

50.     According to the BBB website, three individuals have marked the Defendants' December 15, 2016 review and indicated to the Better Business Bureau that they "found this review helpful."

51.     On information and belief, as a result of Defendants' false and/or misleading statement and review, Creditors Relief's Better Business Bureau rating is no longer an "A+".

52.     On information and belief, Defendants post comments under numerous names and aliases, without any disclosure of their real identity, to give their false, misleading, and defamatory postings greater effect.

53.     On information and belief, Defendants' names and aliases include at least "marcel

bluvstein", "Marcel B.", "Kitchen Emporium Support" (pertaining to Elite Equipment, a business owned and operated by Bluvstein and/or the other Defendants), and "Ruth A."

54.     On information and belief, Defendants made additional false, misleading, and defamatory written (through the Internet and/or other media) and/or oral statements about Creditors Relief, which were communicated to third parties.

55.     Defendants' acts were done without Creditors Relief's authorization or consent.

56.     Defendants' acts were done willfully, in bad faith, and to compete unfairly with Creditors Relief.

57.     On information and belief, as a result of Defendants' above wrongful acts, at least one entity who was a client of Creditors Relief and who had a written contract with Creditors Relief (the "**CR Client**") became a client of Defendants and ceased to be a client of Creditors Relief.

58.     The written contract between Creditors Relief and the CR Client would have resulted in significant payments (and resulting profits) to Creditors Relief, in a specific and ascertainable amount, had Creditors Relief been allowed to proceed without the Defendants' interference.

59.     On information and belief, Defendants used copies of the Creditors Relief Agreement with numerous other individuals and/or entities, some of which were clients of Creditors Relief who had already entered into a written contract with Creditors Relief; some of which were clients of Creditors Relief who were in the process of entering into a written contract with Creditors Relief; some of which were clients of Creditors Relief who had entered into a verbal contract with Creditors Relief; and some of which were potential clients of Creditors Relief.

60.     Creditors Relief had a reasonable expectation of economic advantage with respect

to these clients and/or potential clients.

61.     On information and belief, Defendants' interference with Creditors Relief's reasonable expectation of economic advantage and Defendants' interference with Creditors' Relief contracts was done intentionally and with malice, at least in that it the interference was wrongful and without justification or excuse.

62.     On information and belief, Defendants' interference had a causal connection with Creditors Relief's loss of prospective gain and loss of contractual relationships.

63.     As a result of Defendants' above wrongful acts, Creditors Relief has been harmed and is likely to continue to be harmed by loss of reputation, good-will, and standing in the community, and loss of actual and prospective customers, as well as loss of revenues and profits.

64.     On information and belief, as a result of Defendants' above wrongful acts, including the similarities of the websites, actual and prospective customers are likely to falsely believe that Creditors Relief is or may be a "knock-off" of United Settlement's business and/or may be employing a "knock-off" of United Settlement's website.  As a result, such actual or prospective customers are less likely to do business with Creditors Relief.

65.     As a result of Defendants' above wrongful acts, Creditors Relief has lost the value of exclusive use of the copyrighted content of the Creditors Relief Website and Creditors Relief Agreement.

66.     As a result of Defendants' above wrongful acts, Creditors Relief has been forced to spend substantial sums on attorneys' fees and legal expenses, which sums are continuing to increase.

67.     Creditors Relief's losses are ascertainable.

68.     On information and belief, as a result of Defendants' above wrong acts, Defendants

have wrongfully obtained revenues and profits, at least by wrongfully attracting clients and by wrongfully dissuading them from using Creditors Relief, a direct competitor.

69.     On information and belief, Defendants' actions have damaged and are likely to continue to damage the reputation and good will of Creditors Relief.

70.     Creditors Relief has been and is continuingly being irreparably injured and monetarily damaged by Defendants' acts.

71.     Defendants may, on information and belief, continue to violate Creditors Relief's rights and harm Creditors Relief unless and until they are enjoined by this Court.

72.     Creditors Relief has been and is likely to continue to be irreparably injured unless Defendants are enjoined.

73.     Creditors Relief `has no adequate remedy at law.

## COUNT ONE
## (FALSE ADVERTISING UNDER LANHAM ACT)

74.     Creditors Relief repeats and realleges the allegations set forth in paragraphs 1-73 above, as though fully set forth herein.

75.     This cause of action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76.     The acts of Defendants alleged herein, including Defendants' numerous false and misleading statements, are false or misleading descriptions and/or representations of fact which, in commercial advertising or promotion, misrepresent the nature, characteristics, and qualities of Defendants' services.

77.     Defendants' false and misleading claims are material and are likely to deceive consumers.

78.     On information and belief, Defendants' complained of acts are willful.

79.     On information and belief, as a result of Defendants' false and misleading claims, sales of services have been diverted from Creditors Relief to Defendants.

80.     Creditors Relief has suffered and will continue to suffer from loss of customers and repeat customers.  These injuries are irreparable.  Creditors Relief has no adequate remedy at law.

### COUNT TWO
### (FALSE ADVERTISING UNDER
### THE NEW JERSEY CONSUMER FRAUD ACT

81.     Creditors Relief repeats and realleges the allegations set forth in paragraphs 1-80 above, as though fully set forth herein.

82.     By the acts of Defendants alleged herein, including Defendants' numerous false and misleading statements, Defendants have employed unconscionable commercial practices, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with intent that customers rely upon such concealment, suppression or omission, in connection with the sale or advertisement of "merchandise" as defined by the NJCFA (specifically, services).

83.     The foregoing acts of Defendants constitute unlawful practices in violation of the NJCFA (N.J.S.A. § 56:8-1 *et seq.* (including at least N.J.S.A. § 56:8-2, as informed by the definitions contained in N.J.S.A. § 56:8-1)).

84.     On information and belief, as a result of Defendants' unlawful practices, including but not limited to their false and misleading claims, sales of services have been diverted from Creditors Relief to Defendants, causing an ascertainable loss of, among other things, money, business, customers, and reputation.  Creditors Relief has suffered and will continue to suffer from the loss of, among other things, money, business, customers and repeat customers, and reputation.

Defendants' unlawful practices caused said losses.

## COUNT THREE
### (COPYRIGHT INFRINGEMENT)

85.     Creditors Relief repeats and realleges the allegations set forth in paragraphs 1-84 above, as though fully set forth herein.

86.     This cause of action arises under Section 501 of the Copyright Act of 1976, 17 U.S.C. § 501, *et seq*.

87.     By the acts of Defendants alleged herein, including Defendants' strikingly and substantially similar copying of the Creditors Relief Website and Creditors Relief Agreement, to which Defendants had access, Defendants have infringed U.S. Copyright Registration No. TX 8-345-483 for the Creditors Relief Website and U.S. Copyright Registration No. TXu002044550 for the Creditors Relief Agreement.

88.     On information and belief, Defendants' complained of acts are willful.

89.     Defendants will, on information and belief, continue to infringe upon Creditors Relief's rights under § 501 of the Copyright Act unless and until Defendants are enjoined by this Court.

90.     Creditors Relief has been and is likely to continue to be irreparably injured unless Defendants are enjoined.

91.     Creditors Relief has no adequate remedy at law for the copyright violations set forth herein in Count Three.

## COUNT FOUR
### (DEFAMATION UNDER NEW JERSEY COMMON LAW)

92.     Creditors Relief repeats and realleges the allegations set forth in paragraphs 1-91

above, as though fully set forth herein.

93.     This cause of action arises under the common law of New Jersey.

94.     By the acts of Defendants alleged herein, including Defendants' numerous Internet postings, Defendants have made false statements about Creditors Relief, communicated to third parties.

95.     Defendants' false statements were made with fault amounting at least to negligence.

96.     Indeed, Defendants' false statements were made with fault amounting to at least actual malice, in that Defendants knew that the statements were false or had reckless disregard for their falsity.

97.     Defendants' false statements have damaged Creditors Relief, including but not limited to the following ways: sales of services have been lost and/or diverted from Creditors Relief to Defendants; Creditors Relief has suffered and will continue to suffer from loss of customers and repeat customers; and Creditors Relief's good will and reputation have been harmed.  These injuries are irreparable. Creditors Relief has no adequate remedy at law.


**COUNT FIVE**
**(TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC**
**ADVANTAGE UNDER NEW JERSEY COMMON LAW)**

98.     Creditors Relief repeats and realleges the allegations set forth in paragraphs 1-97 above, as though fully set forth herein.

99.     This cause of action arises under the common law of New Jersey.

100.     Creditors Relief had a reasonable expectation of economic advantage, which was intentionally and with malice (at least in that it was wrongful and without justification or excuse) interfered with by Defendants, which interference had a causal connection with Creditors Relief's loss of that economic advantage.

101.    Defendants' interference has damaged Creditors Relief, including but not limited to the following ways: sales of services have been lost and/or diverted from Creditors Relief to Defendants; Creditors Relief has suffered and will continue to suffer from loss of customers and repeat customers; and Creditors Relief's good will and reputation have been harmed.

### COUNT SIX
### (TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS UNDER NEW JERSEY COMMON LAW)

102.    Creditors Relief repeats and realleges the allegations set forth in paragraphs 1-101 above, as though fully set forth herein.

103.    This cause of action arises under the common law of New Jersey.

104.    Creditors Relief had a contract and contractual relations, which were intentionally and with malice (at least in that it was wrongful and without justification or excuse) interfered with by Defendants, who were not parties to the contract or to the contractual relations, which interference had a causal connection with Creditors Relief's loss of that contract and/or prospective gain thereunder.

105.    Defendants' interference has damaged Creditors Relief, including but not limited to the following ways: sales of services have been lost and/or diverted from Creditors Relief to Defendants; Creditors Relief has suffered and will continue to suffer from loss of customers and repeat customers; and Creditors Relief's good will and reputation have been harmed.

### COUNT SEVEN
### UNFAIR AND DECEPTIVE TRADE PRACTICES

106.    Creditors Relief repeats and realleges the allegations set forth in paragraphs 1-105 above, as though fully set forth herein.

107.    By the acts of Defendants alleged herein, including Defendants' unfair and deceptive trade practices.

108.    The foregoing acts of Defendants constitute unlawful trade practices in violation of N.J.S.A. § 56:8-1 et seq.

109.    On information and belief, as a result of Defendants' unlawful trade practices, including but not limited to their false and misleading claims, sales of services have been diverted from Creditors Relief to Defendants, causing an ascertainable loss of, among other things, money, business, customers, and reputation.  Creditors Relief has suffered and will continue to suffer from the loss of, among other things, money, business, customers and repeat customers, and reputation. Defendants' unlawful practices caused said losses.


**WHEREFORE,** Creditors Relief demands judgment:

a.    Adjudging and decreeing that Defendants have unlawfully infringed Creditors Relief's Creditors Relief Website and Creditors Relief Agreement copyrights, engaged in false advertising pursuant to the Lanham Act (15 U.S.C. § 1125(a)) and the NJCFA (N.J.S.A. § 56:8-1 *et seq*.,), defamed Creditors Relief, and tortiously interfered with Creditors Relief's prospective economic advantage and contractual relations, and engaged in unfair and deceptive trade practices;

b.    enjoining Defendants, their agents, servants, employees and all those acting in concert or participation with them:

  i.    from infringing the Creditors Relief Website and Creditors Relief Agreement copyrights;

  ii.    from making false or misleading statements in connection

19

with sales of their services;

    iii.    from making false, misleading or defamatory statements concerning Creditors Relief, on the Internet or otherwise;

    iv.    from tortiously interfering with Creditors Relief's prospective economic advantage and contractual relationships; and

    v.    from otherwise unfairly competing with Creditors Relief in any manner;

    vi.    from continuing their unfair and deceptive trade practices.

c.    Requiring Defendants:

    i.    to cancel all outstanding contracts for the provision of debt relief services and to refund any monies received from such contracts, pursuant to N.J.S.A § 56:8-2.11; and

    ii.    to notify all customers of the falsity and/or misleading nature of their statements;

d.    Requiring Defendants to pay their profits to Creditors Relief, pay any damages sustained by Creditors Relief as a result of Defendants' acts, and pay Creditors Relief's reasonable attorneys' fees and costs for the action, pursuant to 17 U.S.C. § 504, 15 U.S.C. § 1117, N.J.S.A § 56:8-19, and New Jersey common law.

e.    Requiring Defendants to pay to Creditors Relief three times the amount of Creditor's Relief actual damages due to the circumstances of the case, pursuant to 15 U.S.C. §

1117(a) and N.J.S.A § 56:8-19;

f.      Requiring Defendants to pay to Creditors Relief statutory damages, pursuant to 17 U.S.C. § 504(c);

g.      Requiring Defendants to pay to Creditors Relief punitive or exemplary damages due to the circumstances of the case, pursuant to New Jersey law;

h.      Requiring that all of Defendants' copies of Creditors Relief's Creditors Relief Website and Creditors Relief Agreement and all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies may be reproduced, be impounded and delivered up to the Court for destruction, pursuant to 17 U.S.C. § 503;

i.      Imposing any other damages recoverable under any statute alleged in this Complaint or under New Jersey law; and

j.      Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Creditors Relief LLC requests a trial by jury in this matter.

Dated: September 25, 2017                    Respectfully submitted,

**IAZZETTA LAW LLC**

By:    _____
         _____
         Suzanne Iazzetta, Esq.

*Counsel for Plaintiff Creditors Relief LLC*

## <u>RULE 11.2 CERTIFICATION</u>

I certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. I certify under penalty of perjury that the foregoing is true and correct.

Dated this 25th day of September, 2017

**IAZZETTA LAW LLC**
*Counsel for Plaintiff Creditors Relief LLC*

By:_ _____
      Suzanne Iazzetta, Esq.