**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREDITORS RELIEF LLC, | |
| *Plaintiff,* | Civil Action No. 17-7474 |
| v. | |
| UNITED DEBT SETTLEMENT LLC, et al., | **OPINION** |
| *Defendants.* | |

**John Michael Vazquez, U.S.D.J.**

In this intellectual property and consumer fraud action, Defendants United Debt Settlement, LLC ("United Settlement"), Everything Is In Stock, LLC ("EIIS"), and Marcel Bluvstein (collectively, "Defendants") move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(2) and (6). D.E. 33. Plaintiff Creditors Relief, LLC ("Plaintiff") filed opposition, D.E. 37, to which Defendants replied, D.E. 38. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, the motion to dismiss is **GRANTED**.

---

[1] Defendants' brief in support of their motion to dismiss will be referred to as "Defs.' Br." (D.E. 33); Plaintiff's opposition will be referred to as "Pl.'s Opp." (D.E. 37). Defendants' reply will be referred to as "Defs.' Reply" (D.E. 38).

## I.    BACKGROUND[2]

Plaintiff Creditors Relief, LLC is a New Jersey-based debt settlement company that helps clients obtain debt relief. Compl. ¶¶ 4, 16. Plaintiff has received significant publicity and an A+ rating from the Better Business Bureau (the "BBB"). *Id.* ¶ 18. Plaintiff also maintains a website at www.creditorsrelief.com and www.creditorrelief.com (the "Creditors Relief Website"). *Id.* ¶ 19. Defendant Marcel Bluvstein, a New York resident, is a principal of New York-based Defendant United Settlement and New Jersey-based Defendant EIIS. *Id.* ¶¶ 5-7. Around September 23, 2016, Bluvstein contacted Plaintiff, stating that he was looking for debt relief services. *Id.* ¶ 21. Plaintiff then sent Bluvstein a standard client agreement (the "Creditors Relief Agreement") for his signature. *Id.* ¶¶ 20, 22. Plaintiff claims that Bluvstein's call was a sham – intended only to learn about Plaintiff's business and gain access to the Creditors Relief Agreement. *Id.* ¶ 23.

Shortly after being provided with the Creditors Relief Agreement, Bluvstein founded United Settlement as a competing debt relief services business; Bluvstein filed to incorporate United Settlement five days after contacting Plaintiff. *Id.* ¶¶ 24, 25. United Settlement set up a website at www.unitedsettlement.com (the "United Settlement Website") and allegedly copied content from the Creditors Relief Website. *Id.* ¶¶ 26-27. In particular, the United Settlement Website copied a "Recent Results" graphic from the Creditors Relief Website, purporting to show how United Settlement got results for its clients; the "Results," however, were all obtained by

---

[2] Unless stated otherwise, all facts are drawn from Plaintiff's Complaint ("Compl."), D.E. 1. The well-pleaded facts are taken as true for the purpose of Defendants' motion. *See Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 125-26 (3d Cir. 2016) (quoting *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)) ("[I]n deciding a motion to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.").

Plaintiff. *Id.* ¶¶ 26-28. The United Settlement Website also misrepresented, according to Plaintiff, statistics regarding the total and average savings obtained by United Settlement clients. *Id.* ¶ 31. Plaintiff further alleges that United Settlement copied the Creditors Relief Agreement – in which Plaintiff owns a copyright registration – and used it with United Settlement clients. *Id.* ¶¶ 35-38. In response, Plaintiff's attorneys sent a letter to United Settlement and Bluvstein alleging copyright infringement and false advertising. *Id.* ¶ 39.

Defendants then allegedly attacked Plaintiff online. *Id.* ¶ 40. For example, around December 16, 2016, Defendants posted a Google review stating, "Beware of this company! I called them to get advice on my business debt, after speaking with my creditor I decided to deal with the matter myself. After the company learned I settled my own debt they sent me a cease and desist and threatened to sue." *Id.* ¶ 42. Defendants also posted within the next week, "This company is a scam! Read the reviews on the CEO Michael Lupolover. Beware collects ridiculous fees and does NOT get the job done!" *Id.* ¶ 44. And Defendants posted another similar review on the BBB's website, causing Plaintiff's BBB rating to slip below A+. *Id.* ¶¶ 46, 51. This latter review was posted by a "Marcel B.," but the poster's name later changed to "Ruth A." *Id.* ¶¶ 47-49.[3] Plaintiff claims to have lost existing and prospective clients as a result. *Id.* ¶¶ 57-60.

Plaintiff filed suit, asserting seven claims against all Defendants: (1) false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) false advertising under the New Jersey Consumer Fraud Act ("NJCFA"); (3) copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 501, *et seq.*; (4) common law defamation; (5) common law tortious interference with prospective economic advantage; (6) common law tortious interference with contractual relations;

---

[3] Plaintiff does not know the identity of Ruth A. but alleges that she is one of the Doe Individual Defendants or a representative of one of the Doe Entity Defendants. Compl. ¶ 49.

and (7) unfair and deceptive trade practices. *Id.* ¶¶ 74-109. Defendants moved to dismiss the Complaint on December 18, 2017. D.E. 9. The Magistrate Judge terminated that motion and ordered jurisdictional discovery. Following completion of that discovery, Defendants again moved to dismiss. D.E. 33. Plaintiff filed opposition, D.E. 37, to which Defendants replied, D.E. 38.

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(2) - Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). In such a motion, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). When a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a prima facie case of personal jurisdiction." *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015). In such cases, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.* In other words, a court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Otsuka*, 106 F. Supp. 3d at 462 (citing *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). In addition, a court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in

dispute." *Otsuka*, 106 F. Supp. 3d at 462 n.5 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009)).

A federal court "engages in a two-step inquiry to determine whether it may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction," and (2) "if so, [whether] the exercise of jurisdiction comports with due process" under the Fourteenth Amendment. *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)). "New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction." *Id.* (citing *IMO Industries*, 155 F.3d at 259). Accordingly, the two steps are collapsed into one and a court must "ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

"Personal, or in personam, jurisdiction, [generally] divides into two groups: 'specific jurisdiction' and 'general jurisdiction.'" *Display Works*, 182 F. Supp. 3d at 172 (citing *Burger King*, 471 U.S. at 472 n. 14 (1985)). Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Id.* (quoting *Walden v. Fiore*, 571

5

U.S. 277, 284 n.6 (2014)). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Id.* (quoting *Walden*, 571 U.S. at 284 n.6). Personal jurisdiction can also be obtained through consent, waiver, or in-state service on a defendant. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-97 (1991) (regarding consent via a forum selection clause); *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 628 (1990) (regarding in-state service); *In re Asbestos Products Liability Litigation (No. VI)*, 921 F.3d 98, 104-05 (3d Cir. 2019) (regarding waiver); *Jasper v. Bexar County Adult Detention Center*, 332 F. App'x. 718, 719 (3d Cir. 1999) (regarding consent).

## B. Rule 12(b)(6) - Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do

6

not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## III. LAW AND ANALYSIS

### A. Alter Ego Liability

As an initial matter, Plaintiff pleads that EIIS is an alter ego of United Settlement and Bluvstein. *See* Compl. ¶¶ 10-14. American corporate law is premised on the idea that "a corporation is a separate entity from its shareholders." *Richard A. Pulaski Const. Co., Inc. v. Air Frame Hangars, Inc.*, 195 N.J. 457, 472 (2008). However, under certain circumstances, courts may disregard the corporate form and pierce the corporate veil to hold the shareholders responsible for the actions of the corporation. *Id.* Indeed, these "principles are equally applicable when the shareholder is, in fact, another corporation." *Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 387 N.J. Super. 160, 198 (App. Div. 2006) (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001)). In such cases, plaintiffs must show "that a subsidiary was a mere instrumentality of the parent corporation." *Shotmeyer v. New Jersey Realty Title Ins. Co.*, 195 N.J. 72, 86 (2008) (citation omitted).

Under New Jersey law, a plaintiff must show the following to pierce the corporate veil: "(1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002). The relevant factors in determining whether the first element is satisfied include (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) the insolvency of the debtor corporation; (5) non-functioning of other officers or directors; (6) absence of corporate records;

and (7) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders. *Verni,* 387 N.J. Super. at 200 (citing *Foodtown,* 296 F.3d at 172).

Against this backdrop, Plaintiff makes the following allegations regarding EIIS's purported alter ego status: (1) "Upon information and belief, [EIIS] is an 'alter ego' of United Settlement," Compl. ¶ 6; (2) "Bluvstein has controlled the acts of the defendants," *id.* ¶ 12; (3) "United Settlement, [EIIS], and the Doe Entity Defendants . . . have failed to maintain corporate formalities, and have blurred corporate identities," *id.* ¶ 13; and (4) "[T]here has existed such a unity of interest between and among the Entity Defendants [including EIIS] and Bluvstein that any individuality and separateness of the Entity Defendants and Bluvstein has ceased, and that each is the agent and alter-ego of the other," *id.* ¶ 14.

Defendants argue that these allegations insufficiently plead alter ego liability because the Complaint merely recites the elements for alter ego liability without any factual development, and that Plaintiff has not pled an intent to defraud. Defs.' Br. at 4-6. Plaintiff disagrees, arguing that "Bluvstein is hiding behind the corporate identity to perpetrate fraud by publicly defaming Plaintiff, accomplish injustice by stealing Plaintiff's intellectual property, and circumventing the law[.]" Pl.'s Opp. at 22. Defendants reply that "Plaintiff simply alleges that the Defendants are doing bad things, not that the corporate form is being used specifically to perpetrate a fraud or circumvent justice." Defs.' Reply at 7.

The Court agrees with Defendants. Plaintiff's alter ego allegations are conclusory. The Complaint pleads that United Settlement and EIIS "have failed to maintain corporate formalities, and have blurred corporate identities," Compl. ¶ 13, but do not sufficiently allege how so. The Complaint also makes no allegations regarding five of the seven relevant factors: undercapitalization, non-payment of dividends, insolvency, non-functioning of officers or

directors, and absence of corporate records. *See Verni*, 387 N.J. Super. at 200. As to the two other factors, Plaintiff provides no factual elaboration. "To state a plausible alter-ego claim, a plaintiff must allege more than bare-boned allegations of undercapitalization and common control and/or management. A plaintiff must affirmatively plead both the factors for alter-ego liability and the factual underpinnings supporting those factors with respect to each individual defendant." *Richmond v. Lumisol Elec. Ltd.*, No. 13-1944, 2014 WL 1405159, at *4 (D.N.J. Apr. 10, 2014) (internal citations and quotation marks omitted).

The Complaint fails in this regard. It does not plausibly allege in what way EIIS and United Settlement have blurred their corporate identities, nor through what mechanism Bluvstein dominated EIIS. *See Richmond*, 2014 WL 1405159, at *4 (dismissing alter ego claim where complaint was devoid of "factual allegations supporting how or why [*Verni*] factors were present"); *Holzli v. DeLuca Enterprises*, No. 11-06148, 2012 WL 983693, at *3 (D.N.J. Mar. 21, 2012) (same). Because Plaintiff has "merely pleaded the generic formula for veil piercing and [has] not pleaded facts to support [its] claim," *Holzli*, 2012 WL 983693, at *4, it has not adequately pled alter ego liability.

### B. Personal Jurisdiction over Defendants

Defendants also move to dismiss the Complaint for lack of personal jurisdiction. Each Defendant is addressed in turn.

#### 1. Personal Jurisdiction over Bluvstein

As an initial matter, the Court notes that it does not have general personal jurisdiction over Bluvstein because he lives in New York. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"). For there to exist specific personal jurisdiction, Bluvstein must have "purposefully

directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (internal citations and quotation marks omitted). The minimum contacts analysis depends upon "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). However, actual "[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus., Inc.*, 155 F.3d at 259.

The Third Circuit has developed a three-part test in determining whether specific personal jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted). First, the defendant must have "purposefully directed [its] activities at the forum."[4] *Id.* (internal quotation marks omitted). Second, the litigation must "arise out of or relate to at least one of those activities." *Id.* (internal quotation marks omitted). Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id.* (internal quotation marks omitted).

When an intentional tort is alleged, a slight variation from the *O'Connor* three-part test applies, known as the *Calder* effects test, *O'Connor*, 496 F.3d at 317 n.2, stemming from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test "can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone [] are far too small to comport with the requirements of due process under our

---

[4] This factor has also been characterized as "purposeful availment." *Burger King*, 471 U.S. at 475. The factor focuses on contact that the defendant itself created with the forum State. *Id.* The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person." *Id.* (internal quotation marks omitted) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)); *World-Wide Volkswagen Corp.*, 44 U.S. at 299; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

traditional analysis." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (internal quotation marks omitted). Under *Calder*, "an intentional tort directed at the plaintiff and having sufficient impact upon [the plaintiff] in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc.*, 155 F.3d at 260.

In *IMO Industries*, the Third Circuit held that the *Calder* effects test requires a plaintiff to show that:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

155 F.3d at 265-66 (footnote omitted). Moreover, "[o]nly if the 'expressly aimed' element of the effects test is met need [a court] consider the other two elements." *Marten*, 499 F.3d at 297 (citing *IMO Indus.*, 155 F.3d at 266). "To establish that the defendant 'expressly aimed' his conduct, the plaintiff has to demonstrate 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Id.* at 298 (quoting *IMO Indus.*, 155 F.3d at 266). In sum, the *Calder* effects test – as interpreted by the Third Circuit – requires that a defendant's "'conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there.'" *Marten*, 499 F.3d at 297 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, Plaintiff alleges, *inter alia*, intentional torts. *See* Compl. ¶¶ 92-105. However, despite substantial jurisdictional discovery, Plaintiff attached only three exhibits to its opposition brief: (1) EIIS's New Jersey LLC Registration Certificate, filed by Bluvstein, D.E. 37-2; (2) EIIS's

"Contact Us" webpage, showing its New Jersey address, D.E. 37-3; and (3) a Google review regarding Plaintiff, posted by "marcel bluvstein." D.E. 37-4. The first two exhibits merely show Bluvstein's relationship to EIIS and EIIS's relationship to New Jersey. These exhibits do not show any contacts that Bluvstein, himself, had with this forum which otherwise relate to Plaintiff's claims. *See Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) (noting that the minimum contacts analysis depends on "the relationship among the defendant, the forum, *and the litigation*" (emphasis added)).

The third exhibit – the Google review – is the only exhibit that relates to specific personal jurisdiction. The Google review states as follows:

> "Beware of this company! I called them to get advice on my business debt, after speaking with my creditor I decided to deal with the matter myself. After the company learned I settled my own debt they sent me a cease and desist and threatened to sue. [] This company does not have an ounce of integrity or honesty.

D.E. 37-4. However, even coupled with the other defamatory statements alleged by Plaintiff, *see* Compl. ¶¶ 40-50, these reviews are insufficient to confer personal jurisdiction on this Court. Under *Calder*, a defamatory statement made elsewhere about a New Jersey resident gives rise to specific jurisdiction here only if the defendant "aimed its conduct at New Jersey such that New Jersey was the focal point of the tortious activity." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 180 (D.N.J. 2016) (citing 465 U.S. 783 (1984)); *see also Marten*, 499 F.3d at 297 (3d Cir. 2007) ("[T]he [*Calder*] effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state.").

Here, the challenged statements were posted on two nationally-utilized, general-purpose websites: Google and the Better Business Bureau. Compl. ¶¶ 42, 46. Critically, neither website

is specific to New Jersey. In addition, Plaintiff fails to show how the allegedly defamatory statements on these websites "intentionally targeted" and "focused on" New Jersey. Similarly, Plaintiff does not present evidence "point[ing] to specific activity indicating that [Bluvstein] expressly aimed [his] tortious conduct at" New Jersey. *See Marten*, 499 F.3d at 298 (explaining that where "a plaintiff fails to show that the defendant '"manifest[ed] behavior intentionally targeted at and focused on" the forum [state],' the plaintiff fails to establish jurisdiction under the effects test") (internal citation omitted); *see also Pool & Spa, Enclosures, LLC v. Aqua Shield, Inc.*, No. 16-3418, 2016 WL 7325476, at *4 (D.N.J. Dec. 16, 2016) (posting defamatory statement on website without New Jersey nexus does not confer jurisdiction). Plaintiff points to no other nexus between the defamatory statements and New Jersey, and without these jurisdictional hooks, the *Calder* effects test is not satisfied.

Furthermore, and while admittedly a closer call, the Court also finds that the allegations in the Complaint fail to establish personal jurisdiction. Plaintiff alleges that Bluvstein contacted Plaintiff via telephone to inquire about Plaintiff's business model and to obtain a copy of the Creditors Relief Agreement, which Plaintiff provided. Compl. ¶¶ 21-23. Plaintiff adds that Bluvstein did this "for the purpose of setting up a competing debt relief services business." *Id*. ¶ 23. Moreover, Plaintiff alleges that Bluvstein and United Settlement copied information from the Creditors Relief Website and passed off Plaintiff's settlement results as their own. *Id*. ¶¶ 26-30. Plaintiff further claims that Bluvstein and United Settlement copied the Creditors Relief Agreement, using the copies as the client agreements for their competing debt relief services business. *Id*. ¶¶ 35-38. As such, Plaintiff alleges that, on information and belief, "Defendants used copies of the Creditors Relief Agreement with numerous other individuals and/or entities, some of which were clients of [Plaintiff] who had already entered into a written contract with

[Plaintiff]," or who had entered a verbal contract with Plaintiff, or who were "in the process of entering into a written contract with [Plaintiff.]" *Id.* ¶ 59.

Plaintiff, however, does not allege whether Bluvstein obtained the Creditors Relief Agreement while physically in New Jersey or otherwise contacted individuals located in New Jersey to obtain the information. Plaintiff also does not indicate whether the information allegedly copied by Bluvstein from the Creditors Relief Website or the Creditors Relief Agreement had a nexus to New Jersey. Lastly, Plaintiff does not indicate whether Bluvstein solicited Plaintiff's New Jersey customers in New Jersey or otherwise interfered with Plaintiff's contracts with its New Jersey customers in New Jersey. In sum, other than simply alleging that "Bluvstein contacted [Plaintiff]" and "[Plaintiff provided Bluvstein with the Creditors Relief Agreement," Plaintiff provides no evidence that Bluvstein "purposefully directed [its] activities at" New Jersey. *See O'Connor*, 496 F.3d at 317. Because of this deficiency, coupled with the fact that substantial jurisdictional discovery has already taken place, the Court finds that Plaintiff has not carried its "burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

Moreover, Plaintiff repeatedly asserts that its causes of action arise "directly" from its phone call with Bluvstein. *See, e.g.*, Pl.'s Opp. at 9 (submitting that Bluvstein "purposefully placed a phone call to Plaintiff in New Jersey under false pretenses, and the within cause of action *arises directly* out of that phone call" (emphasis in original)). But the Third Circuit has cautioned that "specific jurisdiction requires a closer and more direct causal connection than" alleging that the claims would not have accrued "but-for" contact with the forum. *O'Connor*, 496 F.3d at 323. Indeed, as with firing an employee who happens to live in this forum, Bluvstein's single call could be "more appropriately described as an act aimed at a party who is located in New Jersey, rather

than as an act aimed at New Jersey." *Minerva Marine, Inc. v. Spiliotes*, No. 02-2517, 2006 WL 680988, at *6 (D.N.J. Mar. 13, 2006) (finding no specific jurisdiction). *See contra Feng v. Frontage Labs., Inc.*, No. 18-03407, 2018 WL 4005748, at *3 (D.N.J. Aug. 21, 2018) (finding specific jurisdiction based on initial contact followed by three-year business relationship and consummation of contract transferring $1 million).

In its opposition, Plaintiff argues that even one contact "may be enough to satisfy jurisdiction as long as the other criteria are met." Pl.'s Opp. at 10 (quoting *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993)). This is true, as far as what the law requires. But the defendants in *Grand Entm't Grp.* made "at least twelve communications to the forum" and initiated negotiations that led to a lawsuit over the resulting "binding agreement[.]" *Id.* at 480, 483. Bluvstein did less than the defendants in *Star Media Sales*; in fact, it appears he made only one contact with the forum, at least as currently alleged. Plaintiff cites no analogous cases in which personal jurisdiction was conferred. As such, the Court find that it does not have specific personal jurisdiction over Bluvstein.

2. Personal Jurisdiction over United Settlement

As an initial matter, United Settlement is incorporated and headquartered in New York. D.E. 33-6, ¶ 2. Consequently, the Court does not have general personal jurisdiction over United Settlement. *Daimler*, 571 U.S. at 137 (general jurisdiction exists over a corporation in its "place of incorporation and [its] principal place of business"). Moreover, the Court does not have specific personal jurisdiction over United Settlement. Plaintiff's "sworn affidavits or other competent evidence" – the three exhibits attached to its opposition brief – do not show any action by United Settlement taken in, or directed towards, New Jersey. Moreover, Plaintiff's allegations in its Complaint do not go beyond that alleged of Bluvstein.

15

However, Plaintiff argues for jurisdiction over United Settlement on two other bases: (1) United Settlement has nine clients in New Jersey, and (2) United Settlement posted defamatory online reviews. Pl.'s Opp. at 15. Neither suffices for specific jurisdiction. The defamatory posts do not give rise to jurisdiction over United Settlement for the same reason as discussed with respect to Bluvstein. The nine United Settlement clients in New Jersey – 2% of its client base – do not either. D.E. 33-5, ¶ 4. A company with clients in a particular state is not subject to jurisdiction there "over a cause of action unrelated to" those specific clients. *Keeton*, 465 U.S. at 779. Only when "the cause of action arises out of the very activity being conducted" in the state – *i.e.*, out of the relationships with those clients – does a court in that state have jurisdiction. *Id.* at 779-80.

Plaintiff's causes of action, as alleged, do not arise from United Settlement's contacts with its clients in New Jersey. According to the Complaint, the tortious interference and unfair competition counts arise from one of Plaintiff's clients becoming a United Settlement client and United Settlement allegedly using the Creditors Relief Agreement with several of Plaintiff's existing or potential clients. Compl. ¶¶ 57, 59. But Plaintiff has not submitted evidence that any of these former or potential clients are based in New Jersey. Consequently, the causes of action do not arise from United Settlement's *New Jersey* clients – and merely having clients in a particular state does not confer personal jurisdiction there. *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros.*, 983 F.2d 551, 557 (3d Cir. 1993) ("Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant[.]").

Exercising jurisdiction over United Settlement would be even more problematic than doing so over Bluvstein, because United Settlement did not exist at the time of Bluvstein's phone call to Plaintiff. As Plaintiff acknowledges, United Settlement was set up a few days *after* that contact. The Due Process Clause does not permit this Court to exercise personal jurisdiction over a

corporation based on contacts with the forum *before* the corporation existed. *See Larada Scis., Inc. v. Skinner*, 147 F. Supp. 3d 1336, 1348 (D. Utah 2015) (finding no personal jurisdiction over corporation based on contract signed by principal of corporation "before the entity came into existence" and where corporation was not alter ego of its principal). Consequently, the Court does not have personal jurisdiction over United Settlement.

    3.  Personal Jurisdiction over EIIS

EIIS does not dispute that that it is subject to this Court's jurisdiction. *See* Defs.' Br. at 6-11 (not arguing that the Court lacks personal jurisdiction over EIIS). With its principal place of business in New Jersey, EIIS is subject to general personal jurisdiction in this forum. *See Daimler*, 571 U.S. at 137 (general jurisdiction exists over a corporation in its "place of incorporation and [its] principal place of business"). Consequently, this Court has personal jurisdiction over EIIS in any suit. *See Walden*, 571 U.S. at 284 n.6.

In sum, the Court cannot exercise personal jurisdiction over Bluvstein or United Settlement, and therefore, the claims against those parties are dismissed for lack of jurisdiction. As such, only EIIS remains as a defendant. The Court in turn addresses the remaining claims against EIIS.

**C. False Advertising Under the New Jersey Consumer Fraud Act (Count 2)**

EIIS moves to dismiss Plaintiff's claim for false advertising under the New Jersey Consumer Fraud Act (the "NJCFA") because Plaintiff lacks statutory standing. Defs.' Br. at 13. According to EIIS, the NJCFA only confers standing on consumers and commercial competitors acting as consumers – not direct competitors like Plaintiff. *Id.* Plaintiff disagrees, contending that direct competitors have standing under the NJCFA. Pl.'s Opp. at 23-24.

The Court agrees with EIIS. While no New Jersey state court decisions directly address this issue, many recent decisions in this District reject the notion that direct competitors suffering non-consumer injuries have NJCFA standing. *See, e.g., EP Henry Corp. v. Cambridge Pavers, Inc.*, No. 17-1538, 2017 WL 4948064, at *4 (D.N.J. Oct. 31, 2017) (concluding that direct competitor lacks standing under NJCFA; collecting cases); *Natreon, Inc. v. Ixoreal Biomed, Inc.*, No. 16-4735, 2017 WL 3131975, at *7 (D.N.J. July 21, 2017) (same); *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, No. 10-453, 2010 WL 5239238, at *11 (D.N.J. Dec. 16, 2010) (same). These decisions, and those they cite, generally rely on the Third Circuit's explanation that "the [NJ]CFA seeks to protect consumers who purchase 'goods or services generally sold to the public at large. . . . '[T]he entire thrust of the Act is pointed to products and services sold to consumers in the popular sense.'" *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Marascio v. Campanella*, 298 N.J. Super. 491, 499 (App. Div. 1997) and *Arc Networks, Inc. v. Gold Phone Card Co.*, 333 N.J. Super. 587, 589 (Law Div. 2000)). Direct competitors are not "consumers in the popular sense" – and Plaintiff does not buy anything from Defendants. The Court therefore finds that direct competitors like Plaintiff do not have standing under the NJCFA.

Plaintiff raises three arguments in opposition, but the Court does not find them availing. First, Plaintiff cites *Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, No. 05-898, 2005 WL 2230318 (D.N.J. Sept. 13, 2005), and submits that "this Court allowed Plaintiff to move forward with a claim against its direct competitor for false advertising under the NJCFA[.]" Pl.'s Opp. at 23. In that case, however, neither party raised the issue of standing, and Judge Debevoise did not find that the NJCFA confers standing on direct competitors. *Glaxosmithkline*, 2005 WL 2230318. Indeed, no court in this District has held as much.

Second, Plaintiff argues that "New Jersey common law expressly provides that competitors have standing to sue under the NJCFA." Pl.'s Opp. at 23. Two courts in this District have rejected this same argument. Judge Wolfson first rejected it in *Church & Dwight* and distinguished the line of cases on which Plaintiff relies, including *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D.N.J. 2006). As Judge Wolfson explained, the *800-JR Cigar* decisions do not support NJCFA standing because they rely on a case that "did not involve NJCFA claims." *Church & Dwight*, 2010 WL 5239238, at *10 (citing *Feiler v. New Jersey Dental Ass'n*, 191 N.J. Super. 426, 430-31 (Ch. Div. 1983)). Judge Arleo held likewise and clarified that two other cases cited by Plaintiff – *Glaxosmithkline* and *Gen. Dev. Corp. v. Binstein*, 743 F. Supp. 1115, 1131 (D.N.J. 1990) – do not confer NJCFA standing on direct competitors. *See Interlink Products International, Inc. v. Cathy Trading, LLC*, No. 16-2153, 2017 WL 931712, *3 (D.N.J. Mar. 9, 2017).

Finally, Plaintiff relies on *Citizens United v. FEC* for the position that the NJCFA must confer standing on competitors so as to avoid impermissibly discriminating against "those that have taken on the corporate form[.]" Pl.'s Opp. at 23-24 (quoting 558 U.S. 310, 356 (2010)). The NJCFA does not discriminate against corporations or LLCs (such as Plaintiff). The statute confers standing on numerous entities – just not direct competitors. Indeed, entities purchasing goods and services for their own use – *i.e.*, as consumers of the goods and services – have standing. *See Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 544 (D.N.J. 2013) (denying motion to dismiss NJCFA claim for lack of standing because corporation "was a consumer [when] it purchased the [order processing] system for consumption, not resale"); *Hundred E. Credit Corp. v. Eric Shuster Corp.*, 212 N.J. Super. 350, 357 (App. Div. 1986) (permitting NJCFA claim by corporation regarding sale of computers); *id.* at 355-56 ("[A] business entity can be, and frequently is, a consumer in the ordinary meaning of that term . . . [and][s]ince a business entity is also a

'person' entitled to recover under the Act, there is no sound reason to deny it the protection of the Act."). Plaintiff, as an LLC, would have NJCFA standing under certain circumstances; however, as a direct competitor of Defendants, it does not have standing in this case. Accordingly, Plaintiff's NJCFA false advertising claim is dismissed for lack of standing.

### D. Defamation (Count 4)

EIIS also moves to dismiss Plaintiff's defamation claim. In New Jersey, an action for defamation requires the plaintiff to establish: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence by the publisher." *DeAngelis v. Hill*, 180 N.J. 1, 13 (N.J. 2004) (citing Restatement (Second) of Torts § 558 (1977)).

Plaintiff alleges that EIIS "made multiple false, misleading and defamatory postings about Plaintiff on the Internet." Compl. ¶ 40. Defendants – including EIIS – allegedly posted the following Google review about Plaintiff: "Beware of this company! I called them to get advice on my business debt, after speaking with my creditor I decided to deal with the matter myself. After the company learned I settled my own debt they sent me a cease and desist and threatened to sue." *Id.* ¶ 42 ("Statement 1"). They later posted another Google review: "This company is a scam! Read the reviews on the CEO Michael Lupolover. Beware collects ridiculous fees and does NOT get the job done!" *Id.* ¶ 44 ("Statement 2"). And Defendants posted a similar review on the BBB's website:

> Beware of this company, they are un-American! I contacted Plaintiff in search for help with my business cash advance loan. After getting the contract emailed to me . . . [I] did not sign the contract . . . . When Michael L[upolover, member of Plaintiff] learned I opened my own company and settled my own debt he sent me cease and desist letter and is now threatening to sue. This company is un-American and feels entitled. Just because I spoke to them they feel they own me

and I have no rights, think again Michael L[upolover]! This company is greedy and unfair . . . . Beware of this company!!

*Id.* ¶ 46 ("Statement 3"). Defendants move to dismiss on the grounds that Plaintiff does not allege that the statements were false and that they are not defamatory. Defs.' Br. at 14-15.[5] The Complaint repeatedly claims that the above statements are false. Compl. ¶¶ 40-46. However, whether the statements are defamatory is a closer call.

In Statement 1, the only plausibly defamatory portion is the first line: "Beware of this company!" *See* Compl. ¶ 40. New Jersey courts have not decided whether statements telling consumers to "Beware of" a company are defamatory. Courts in other states regularly hold that, without more, they are not. *See, e.g., Action Repair, Inc. v. Am. Broad. Companies, Inc.*, 776 F.2d 143, 147 (7th Cir. 1985) ("Buyer Beware" regarding plaintiff-company held to be unactionable opinion); *Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.*, No. 09-5232, 2010 WL 3732984, at *9 (W.D. Wash. Sept. 13, 2010) ("It's a view to die for – buyers beware" regarding plaintiff's apartment complex held to be "purely rhetorical hyperbole, opinion, and/or not provably false"); *Snow Sys., Inc. v. Tanner*, No. 16-0347, 2017 WL 716047, at *7 (App. Ct. Ill. Feb. 22, 2017) ("The word 'Beware' is a very broad, non-specific admonishment, and as such, does not satisfy the heightened specificity and particularity requirement applicable to defamation *per se* claims."). *Compare Sallustio v. R. Kessler & Assocs., Inc.*, 64 N.Y.S.3d 415, 416 (App. Div. 2017) ("BEWARE" defamatory when accompanied by claim that defendant-company "SCREWED" plaintiff). The Court agrees with this reasoning: telling other consumers to "beware" of a company or its products is "opinion, and/or not provably

---

[5] Defendants do not challenge Plaintiff's pleading on the second and third elements of the defamation cause of action: unprivileged publication to a third party and fault by the publisher. *DeAngelis*, 180 N.J. at 13.

false," and therefore not defamatory. *Tanner*, 2017 WL 716047, at \*7. Accordingly, EIIS does not state a claim for defamation regarding Statement 1.

Statement 2 contains three plausibly defamatory points: "This company is a scam!"; "Beware collects ridiculous fees"; and "does NOT get the job done[.]" *See* Compl. ¶ 44. The parties focus on the use of the word "scam," disagreeing over whether Defendants' use of that term is protected opinion speech. Pl.'s Opp. at 26-28; Defs.' Reply at 11-12. Courts have reached varying conclusions on this question. And when courts disagree, it is typically due to the context in which the speaker uses the word "scam." For example, in *Roberts v. Mintz*, the court found the statement on defendant-customer's blog that he was "scammed" by plaintiffs-dog breeders to be non-actionable opinion based on "three elements of context": (1) the words "immediately surrounding" the word "scammed" "include[d] sarcastic quips"; (2) "defendant's invective grew more disparaging in response to comments left by readers claiming to be plaintiffs, which attacked defendant using incendiary language"; and (3) the defendant made the statement under the heading "Rants and Raves," signaling personal opinion rather than objective fact. No. A-1563-14T4, 2016 WL 3981128, at \*6-7 (N.J. Super. Ct. App. Div. July 26, 2016). Taken together, this context led the *Roberts* court "to conclude that a reasonable reader would not take defendant's use of these words literally." *Id.* at \*6.

The court reached the opposite conclusion in *Shadle v. Nexstar Broad. Grp., Inc.*, where the defendant-broadcaster labeled plaintiff's business of buying and selling gold a "gold selling scam" and called plaintiff a "scam artist" who was reported to be operating without a license. No. 13-2169, 2014 WL 3590003, at \*4-5 (M.D. Pa. July 21, 2014). Based on the context in that case, the court found that "[a] possible implication of this juxtaposition [of the use of the word "scam" and plaintiff's lack of a license] is that [plaintiff] not only allowed his license under the Metals Act

to lapse, but that he operated a 'shady business,' defrauding and deceiving his customers." *Id.* (opinion denying motion to dismiss defamation claim). The court in *Shadle* found the term "scam" – meaning "a fraudulent or deceptive act or operation" according to Mirriam-Webster – capable of definition and therefore capable of being proven true or false. *Id.* (citation omitted).

Yet, the court in *McCabe v. Rattiner*, reached the opposite conclusion, finding the word "scam" "incapable of being proven true or false" when "[e]xamin[ed] in the context of [defendant]'s article" – namely, that the defendant "wrote the article in first person narrative style, explicitly raising questions about a matter of public concern. This style of writing puts the reader on notice that the author is giving his views." 814 F.2d 839, 842-43 (1st Cir. 1987). As the *McCabe* court explained:

> Readers may have disagreed with the conclusion that it was a scam, but they could not have said that the conclusion was false, because there is no core meaning of scam to which [defendant]'s facts and allegation can be compared. Is it a scam to promise a lobster dinner and then only give it after protest? Is it a scam to gross approximately $9 million from a 25 unit resort? The answer depends on the meaning given to the word "scam." In this sense, the article is as much an opinion about the meaning of "scam" as it is an opinion about whether the encounter was a scam.

*Id.* at 843. The question becomes whether a reader of Statement 2 would understand Defendants to be giving their own views, as in *Roberts* and *McCabe*, or to be reporting based on objective facts, as in *Shadle*.

The Court concludes, based on the context of Statement 2, that its use of the term "scam" is protected opinion, and would not be understood to be reporting an objective fact. First, Defendants posted the statement as a Google review, which is much more similar to the blog post in *Roberts* than to the news article in *McCabe*. Second, the words surrounding the "scam" epithet are non-factual: "Read the reviews on the CEO Michael Lupolover. Beware collects ridiculous

fees and does NOT get the job done!" Compl. ¶ 44. Unlike the reporting in *Shadle*, they do not

suggest that Plaintiff is engaged in any malfeasance, but rather that Plaintiff's prices are too high

or that its performance is inadequate. This does not imply fraud, which is provably true or false,

but instead suggests the speaker's opinion as to the value of Plaintiff's services. Put another way,

"a reader would not reasonably understand defendant[s] as charging [Plaintiff] with a crime or

fraud. Instead, a reasonable reader would interpret these statements as name-calling and

hyperbole." *Roberts*, 2016 WL 3981128, at *7. Therefore, the Court find that Statement 2 is a

non-actionable opinion.

Statement 3 contains several possibly defamatory statements: "Beware of this company,

they are un-American!"; "This company is un-American and feels entitled"; and "This company

is greedy and unfair[.]" *See* Compl. ¶ 46. However, these statements are also non-actionable

opinions. The use of "Beware" is not defamatory, as discussed, and the remaining statements are

not presented as falsifiable facts. *See, e.g., Mosler v. Whelan*, 28 N.J. 397, 405-06 (1958) (calling

defendant "un-American" is not defamatory "as a rhetorical effusion to any social, economic or

governmental program espoused by an adversary"); *Fetter v. N. Am. Alcohols, Inc.*, No. 06-4088,

2007 WL 551512, at *12 (E.D. Pa. Feb. 15, 2007) (statements that "plaintiff was greedy,

unreasonable, or foolish reflect personal opinion and therefore do not constitute defamation").

Plaintiff does not allege any statement that is capable of defamatory meaning. Consequently, its

defamation claim is dismissed.

### E. Tortious Interference with Prospective Economic Advantage (Count 5) and with Contractual Relations (Count 6)

To state a claim as to tortious interference with prospective economic advantage, a plaintiff

must allege "(1) [the] plaintiff's reasonable expectation of economic benefit or advantage, (2) the

defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference

with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference." *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 186 (3d Cir. 1992) (citing *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751-52 (1989)). A plaintiff must further allege "an existing contract" in order to state a claim for tortious interference with contractual relations. *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.*, 256 F. Supp. 2d 249, 288 (D.N.J. 2003). EIIS moves to dismiss both counts. Defs.' Br. at 15-17.

Defendants argue that Plaintiff fails to state a claim by merely alleging "the loss of unknown customers," rather than "some concrete injury in the form of either an existing contractual relationship or actual prospective economic advantage." *Id.* at 16-17. They further contend that Plaintiff has failed to plead Defendants' knowledge and intent. *Id.* at 17. Plaintiff responds that it does not need to identify a specific lost customer, that its pleading is sufficient, and that Defendants are trying to impose a heightened, yet unwarranted, pleading standard. Pl.'s Opp. at 25-26.

The Court disagrees with Plaintiff's contention that it need not identify a specific contract. As support, Plaintiff raises *Prima v. Darden Rests., Inc.* and states that the tortious interference claim survived even though "the plaintiff did not identify any customer that was lost as a result of defendant's actions[.]" Pl.'s Opp. at 25 (quoting 78 F. Supp. 2d 337, 354-55 (D.N.J. 2000)). But *Prima* dealt exclusively with a claim for tortious interference with prospective economic advantage, not one for tortious interference with contractual relations. *See* 78 F. Supp. 2d at 354-55 (concluding "that the plaintiff has sufficiently plead the elements of tortious interference with prospective economic advantage under New Jersey law"). *Prima* is therefore inapplicable. Moreover, Plaintiff cites no other authority casting doubt on the black-letter law that "the tortious

interference with contractual relations claim requires proof of an existing contract." *Carpet Grp. Int'l*, 256 F. Supp. 2d at 288; *see also Ingris v. Drexler*, No. 14-2404, 2015 WL 1472657, at *5 (D.N.J. Mar. 30, 2015) ("Plaintiff has not stated a claim for interference with contractual relations because he has not alleged the existence of a contract.").

Indeed, the Complaint merely alleges the boilerplate that, "On information and belief, as a result of Defendants' above wrongful acts, at least one entity who was a client of Plaintiff and who had a written contract with Plaintiff [] became a client of Defendants and ceased to be a client of Plaintiff." Compl. ¶ 57. This allegation is insufficient to plausibly state a claim. *Cf. New Jersey Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 309 (D.N.J. 2015) (finding contract adequately alleged where plaintiff identified particular specific relationships disrupted by defendant's conduct); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."). Accordingly, the Court dismisses Count 6.

With respect to Count 5, Plaintiff merely pleads the boilerplate elements of tortious interference with prospective economic advantage. *See* Compl. ¶¶ 59-60 ("On information and belief, Defendants used copies of the Creditors Relief Agreement with numerous other individuals and/or entities, . . . some of which were potential clients of [Plaintiff]. [Plaintiff] had a reasonable expectation of economic advantage with respect to these clients and/or potential clients."), ¶ 61 ("On information and belief, Defendants' interference with [Plaintiff]'s reasonable expectation of economic advantage and Defendants' interference with [Plaintiff's] contracts was done intentionally and with malice[.]"). However, Plaintiff fails to allege sufficient facts to support these conclusory allegations.

Plaintiff submits that it should not be held to such a high pleading standard, and that New Jersey state courts regularly permit tortious interference claims where the prospective economic advantage is as vague as sales to "the public." Pl.'s Opp. at 25-26 (quoting *DiCristofaro v. Laurel Grove Memorial Park*, 43 N.J. Super 244, 256 (App. Div. 1957)). But state court pleading rules are inapplicable in this diversity action: "A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). And the Federal Rules of Civil Procedure "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plaintiff's Complaint lacks factual content. It pleads the elements of a tortious interference claim without any pretense of who, what, when, where, why, and how Plaintiff was harmed. That is insufficient to state a claim, and therefore, the Court dismisses Count 6.

### F.  Unfair and Deceptive Trade Practices (Count 7)

EIIS also moves to dismiss Plaintiff's Unfair and Deceptive Trade Practices claim, which EIIS contends is just another NJCFA false advertising claim in sheep's clothing. Defs.' Br. at 13. EIIS submits that this count should be dismissed for lack of NJCFA standing. *Id.* Plaintiff does not specifically address Count 7, instead arguing broadly that it has NJCFA standing. Pl.'s Opp. at 23-24. The Court already rejected this position and therefore dismisses Count 7 for lack of standing.

### G.  Plaintiff's Remaining Claims (Counts 1 and 3)

Plaintiff's only remaining claims against EIIS are Counts 1 (Lanham Act false advertising) and 3 (copyright infringement). Defendants move to dismiss these counts on the grounds that the

Complaint "alleges no direct, wrongful action by EIIS." Defs.' Br. at 4-6. Plaintiff opposes by pointing to allegations made specifically against EIIS and other allegations made against "Defendants" – which Plaintiff argues includes EIIS. Pl.'s Opp. at 19-22. Defendants reply that none of the identified allegations "suffice to state a claim." Defs. Reply at 13.

Plaintiff is correct that its Complaint does allege wrongful conduct by EIIS. However, as enumerated by Plaintiff in its opposition brief, those allegations only relate to some counts in the Complaint. The Complaint alleges the EIIS (1) is an alter ego of Bluvstein and United Settlement, (2) made defamatory posts about Plaintiff, and (3) unfairly interfered with Plaintiff's expected economic advantage. *See* Pl.'s Opp. at 20-22. None of these allegations go to the remaining claims against EIIS: copyright infringement and false advertising. Both counts deal with Defendants' alleged copying of Plaintiff's content – namely, improperly reproducing the Creditors Relief Website and the Creditors Relief Agreement and passing off Plaintiff's results as United Settlement's own. *See* Compl. ¶¶ 26-38. These paragraphs accuse Bluvstein and United Settlement only. *See, e.g.*, Compl. ¶ 26 ("United Settlement and Bluvstein also made slavish and/or substantially similar copies of the Plaintiff Website."), ¶ 32 ("United Settlement's and Bluvstein's misrepresentations of the nature, characteristics, and/or qualities of their services in commercial advertising or promotion occurred in interstate commerce."), ¶ 35 ("United Settlement and Bluvstein also made slavish copies of the Creditors Relief Agreement, which is copyrighted work, in which all or substantially all of the protectable expression was copied."). None of the allegations mention EIIS or "Defendants" generally. Consequently, the Complaint does not state a claim for copyright infringement or Lanham Act false advertising against EIIS. Counts 1 and 3 are therefore dismissed.

## IV. CONCLUSION

Defendants' motion to dismiss, D.E. 33, is granted. All claims against Bluvstein and United Settlement are dismissed for lack of personal jurisdiction. All claims against EIIS are dismissed for failure to state a claim upon which relief can be granted. Given that jurisdictional discovery has been conducted, the Court would normally dismiss without leave to amend as to Bluvstein and United Settlement. However, the Complaint provides sufficient factual information that gives the Court pause. While the factual content, as pled, does not confer personal jurisdiction, the Court can reasonably foresee circumstances in which personal jurisdiction could be conferred. Of course, if Plaintiff had access to this information, it should have included it in its opposition to the current motion. As a result, the Court grants leave to amend as to all Defendants.

Plaintiff is provided with thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiff fails to do so, then the Complaint will be dismissed with prejudice. If Plaintiff intends to refile the action in another court rather than amend, it should notify the Court in writing before the thirty days expires. An appropriate Order accompanies this Opinion.

Dated: December 20th, 2019

John Michael Vazquez, U.S.D.J.